RISCATTI ET AL., APPELLEES, *v*. PRIME PROPERTIES LIMITED PARTNERSHIP ET AL.; CUYAHOGA COUNTY, APPELLANT.

[Cite as *Riscatti v. Prime Properties Ltd. Partnership,* 137 Ohio St.3d 123, 2013-Ohio-4530.]

*Final, appealable orders—Political-subdivision tort immunity—R.C. 2744.02(C)—Denial of motion for judgment on pleadings based on statute of limitations not appealable.*

(No. 2012-1307—Submitted June 11, 2013—Decided October 15, 2013.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 97270 and 97274, 2012-Ohio-2921.

_____

**O'CONNOR, C.J.**

{¶ 1} This appeal arises from claims for damages caused by the continual flow of gasoline from a gas station's infrastructure into a sanitary sewer main located on State Road in Parma. The plaintiffs-appellees (collectively, "the homeowners") are 100 current or former residents or owners of homes on State Road who seek damages from various private and public entities, including the appellant, Cuyahoga County.[1]

{¶ 2} In this appeal, we decide a narrow issue: whether a denial of a public subdivision's dispositive motion asserting a statute-of-limitations defense pursuant to R.C. 2744.04 is a final, appealable order. We conclude that it is not. Accordingly, we affirm.

_____

1. Although this opinion refers to only three homeowners by name, two cases, now consolidated, were brought by a total of 100 plaintiffs who are or were homeowners or residents of State Road in Parma. The defendants include Marathon Oil Company (which allegedly formerly owned the gas station), Prime Properties Limited Partnership (which allegedly operated it), the Northeast Ohio Regional Sewer District (which allegedly provides sewer maintenance to some municipalities), the city of Parma (which allegedly owns the sewer lines), and the county.

**RELEVANT BACKGROUND**

{¶ 3}   Because this is an appeal from a defendant's motion for judgment on the pleadings, we are required to accept as true all the material allegations of the complaint, as well as the inferences to be drawn therefrom, in favor of the nonmoving parties, the homeowners.  *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 2.

{¶ 4}   On August 28, 2009, after a heavy rainfall, the smell of gasoline arose in the basement of the home shared by appellees Alessandra Riscatti, Elisabetta Riscatti, and Laszlo Beres.  Later that day, while Alessandra was in the basement, flames erupted from the sewer and spread through the house. Alessandra and Laszlo battled the fire while waiting for the Parma Fire Department's arrival; by the time the three residents escaped their home, each had inhaled smoke that contained toxic substances, and Alessandra required treatment for carbon monoxide poisoning and smoke inhalation.

{¶ 5}   The fire department extinguished the fire, but the interior of the home and almost all of the personal items within were damaged or destroyed.

{¶ 6}   Investigations by the Ohio Bureau of Underground Storage Tank Regulation ("BUSTR"), the Parma Fire Department ("PFD"), the Environmental Protection Agency ("EPA"), and the Northeast Ohio Regional Sewer District revealed gasoline in an observation well, gasoline-contaminated groundwater, and the continuous flow of gasoline from a nearby gas station into the sanitary sewer main on State Road.  The gas station was ordered to shut down operations immediately.

{¶ 7}   BUSTR ordered an excavation of the tank system and discovered that drain pipes connected an underground storage-tank cavity under the gas station to the sanitary sewer main on State Road and that the connection had been in place since the gas station installed the pipes in 1982.  The pipes had been installed in order to keep the tank from floating in case of rising groundwater

levels during rain or snowmelt. Over the years, however, the pipes caused continual dumping of gasoline-contaminated groundwater into the sanitary sewer main, and eventually into the sewer lines of homes along State Road.

{¶ 8} The homeowners allege that in early 2008, they and their neighbors, and motorists in the area, contacted PFD to report a strong odor of gasoline inside and outside their homes and along the road. PFD discovered heavy gasoline vapors in the sewer main, and a BUSTR investigator found gasoline visibly leaking from a pump filter and into a catch basin at the gas station. The sewer district confirmed the gas station as the source of the odors in State Road homes but failed to inform the homeowners.

{¶ 9} After that discovery, BUSTR cited the owner of the gas station for failing to periodically inspect the equipment at the station. Despite that citation, and eight prior documented gas leaks dating back to 1989, the owner of the gas station made no effort to determine how the toxins had made it into the homes on State Road.

{¶ 10} The homeowners assert that they had smelled and complained of gasoline odors in their homes since 1982 but that PFD, the EPA, BUSTR, the sewer district, and the owners and operators of the gas station all assured them that the gas odors were not coming from the gas station, but from natural sources. As a result, the homeowners allege, they were exposed to toxic gasoline vapors, without knowing the danger or origin, from 1982 until the flames burst into the Riscattis' basement in 2009.

{¶ 11} The homeowners brought suit against various defendants, including the county.[2] Their amended complaints aver that the county's failure to properly maintain and operate the sewer system constituted a tort for which it lacked immunity according to R.C. 2744.01(G)(2)(d) and 2744.02.

---

2. The homeowners' claims against other defendants are not at issue in this appeal, and we do not discuss them or intimate any opinion about them.

{¶ 12} Before discovery was conducted, the county filed several dispositive motions. The first motion sought judgment on the pleadings on the theory that the homeowners' causes of action had not been filed within the two-year statute of limitations applicable to political subdivisions. R.C. 2744.04(A). The trial court denied the motion.

{¶ 13} The trial court also considered a second dispositive motion, brought by the county pursuant to both Civ.R. 12(C) and 56, that is not directly at issue in this appeal. In that motion, the county sought judgment in its favor based on "issues of immunity and causation," including the theory that the county was immune by operation of R.C. 2744.01(C)(2)(l) and 2744.02, which confer immunity on a political subdivision against liability based on its design of a sewer system. The court denied the motion to the extent that the immunity claim was based on Civ.R. 12(C), but the court held its decision on summary judgment in abeyance until discovery was complete.

{¶ 14} The county immediately appealed both judgments. The Eighth District Court of Appeals held that it did not have jurisdiction to consider the statute-of-limitations claim due to the lack of a final, appealable order. The county appealed to this court and now insists that the denial of that motion is a final, appealable order over which the appellate court had jurisdiction. We turn now to that question.

## ANALYSIS

*Ohio's Political Subdivision Tort Liability Act, R.C. Chapter 2744*

{¶ 15} R.C. Chapter 2744, Ohio's Political Subdivision Tort Liability Act, was enacted in response to the judicial abrogation of the common-law immunity of political subdivisions. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 558, 733 N.E.2d 1141 (2000). R.C. Chapter 2744 generally shields political subdivisions from tort liability in order to preserve their fiscal integrity. *See, e.g.,*

*Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 23; R.C. 2744.02(A)(1).[3]

{¶ 16} We previously have recognized that the General Assembly made clear the purpose, and importance, of this statutory scheme:

> "[T]he protections afforded to political subdivisions and employees of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local governments and the continued ability of local governments to provide public peace, health, and safety services to their residents." Am.Sub.H.B. No. 176, Section 8, 141 Ohio Laws, Part I, 1733.

*Summerville v. Forest Park,* 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 38.

{¶ 17} In so doing, we also recognized that immunity determinations are vitally important to the parties' interests, and to judicial economy:

> " '[D]etermination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter 2744 is beneficial to both of the parties. If the appellate court holds that the political subdivision is immune, the litigation can come to

---

3. R.C. 2744.02(A)(1) states:

   Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees. Alternatively, if the appellate court holds that immunity does *not* apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.' " (Emphasis sic.) [*Hubbell*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878] at ¶ 25, quoting *Burger v. Cleveland Hts.* (1999), 87 Ohio St.3d 188, 199-200, 718 N.E.2d 912 (Lundberg Stratton, J., dissenting).

*Id.* at ¶ 39.

### *Final, appealable orders and R.C. Chapter 2744*

{¶ 18} "An appellate court can review only final orders, and without a final order, an appellate court has no jurisdiction." *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 10. Given the legislative intent in enacting the political-subdivision-immunity statute and the important prudential considerations the statute serves, it is not surprising that the General Assembly enacted R.C. 2744.02(C),[4] which provides that an order denying a political subdivision the benefit of immunity is a final order that may be appealed immediately. R.C.

---

4. "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." R.C. 2744.02(C).

2744.02(C); *Supportive Solutions, L.L.C.*, at ¶ 11; *see also Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, syllabus.

{¶ 19} Consistent with the legislative intent behind R.C. Chapter 2744, we have interpreted R.C. 2744.02(C) broadly. We have held that R.C. 2744.02(C)'s scope extends to the denial of a motion for summary judgment that is based on a claim that the political subdivision is immune under R.C. Chapter 2744, *Hubbell*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, at ¶ 27, and to the denial of a political subdivision's motion to amend its answer to a complaint in order to assert an immunity defense based on R.C. Chapter 2744, *Supportive Solutions, L.L.C.*, at ¶ 23. The breadth of our decisions in *Hubbell* and *Supportive Solutions, L.L.C.,* is anchored in precedent and public policy, but the decisions divided the court and engendered spirited dissents. *See, e.g., id.,* at ¶ 24-26 (Lanzinger, J., dissenting) (stating that *Hubbell* was wrongly decided and that *Supportive Solutions, L.L.C.,* was an unwarranted extension of *Hubbell*). Here, however, we are of one mind. We hold that the court of appeals properly held that an order denying a motion for judgment on the pleadings that is predicated on a statute-of-limitations defense does not deny the benefit of immunity and is not a final, appealable order even though it arose along with a political subdivision's immunity claim.

{¶ 20} The court of appeals correctly recognized that the county's statute-of-limitations theory was not a claim of immunity. Although our prior decisions have interpreted R.C. 2744.02(C) broadly in favor of early appeal, they have always been tethered directly to the defense of immunity, not to other defenses. *E.g., Supportive Solutions, L.L.C.*, at ¶ 13. Here, however, there is no such nexus to immunity. R.C. 2744.04(A)[5] sets forth the statute-of-limitations defense for

---

5. R.C. 2744.04(A) provides:

actions against subdivisions, but it has nothing to do with the immunity of subdivisions. As our courts of appeals have repeatedly recognized, there is a meaningful distinction between a claim of immunity and a defense of the statute of limitations. *See, e.g.*, *Guenther v. Springfield Twp. Trustees*, 2012-Ohio-203, 970 N.E.2d 1058, ¶ 24 (2d Dist.) (recognizing that an order denying summary judgment based on a political subdivision's immunity defense is a final, appealable order but holding that the "denial of summary judgment based on a statute of limitations, however, does not deny the political subdivision the benefit of immunity"); *Makowski v. Kohler*, 9th Dist. Summit No. 25219, 2011-Ohio-2382 (holding that the trial court's conclusion that the plaintiffs' claims were not barred by the statute of limitations was not a final, appealable order because it denied the political subdivision only the benefit of the statute of limitations, not the benefit of immunity); *Essman v. Portsmouth*, 4th Dist. Scioto No. 08CA3244, 2009-Ohio-3367, ¶ 10 ("because the trial court's decision to deny appellant summary judgment on its statute of limitations defense does not deny appellant the benefit of R.C. Chapter 2744 immunity, there is no exception to the general rule that a denial of summary judgment is a non-final appealable [sic] order," and accordingly, the appellate court lacked jurisdiction to consider the denial of summary judgment on the basis of a statute-of-limitations defense).

{¶ 21} The court of appeals in this case correctly held that the fact that a political subdivision is the party that raises a statute-of-limitations defense does

---

An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought within two years after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code. The period of limitation contained in this division shall be tolled pursuant to section 2305.16 of the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state.

not change the general rule that the ruling on that defense is not a final, appealable order. 2012-Ohio-2921, ¶ 17. Because the order denying the motion for judgment on the pleadings based on the statute of limitations was not a final, appealable order, the appellate court correctly concluded that it lacked jurisdiction to entertain that appeal.

## CONCLUSION

{¶ 22} The court of appeals properly dismissed the county's appeal of the trial court's order denying the motion for judgment on the pleadings because that order is not a final, appealable order. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Landskroner, Greco, Merriman, L.L.C., Drew Legando, Jack Landskroner, and Tom Merriman, for appellees.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for appellant.

Walter, Haverfield, L.L.P., and R. Todd Hunt, urging reversal for amicus curiae, Northeast Ohio Law Directors Association.

_____