[Cite as *Smith v. Euclid*, 2019-Ohio-3099.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| FRANK M. SMITH, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 107771 |
| CITY OF EUCLID, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-887357

### *Appearances:*

Henderson & Schmidlin & McGarry Co., L.P.A., Timothy
L. McGarry, and Brendan Mewhinney, *for appellee.*

Walter & Haverfield, L.L.P., R. Todd Hunt, Benjamin G.
Chojnacki, and Sara J. Fagnilli, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, the city of Euclid ("the City"), appeals the trial court's decision denying its motion for summary judgment. For the reasons set forth below, we affirm.

{¶ 2} In October 2017, plaintiff-appellee, Frank Smith ("Smith") brought a breach of easement and negligence–nuisance action against the City for damage to his residential property located at 21731 Edgecliff Drive ("property") in Euclid, Ohio. Smith's property abuts Lake Erie. The prior owner of the property granted an easement to the City on Smith's property to allow the City to maintain an overflow sanitary relief sewer. The sewer line runs through the west side of the property and through a concrete sewer out into Lake Erie.

{¶ 3} In 2012, a sinkhole developed on the property behind the retaining wall. The City's investigation of this sinkhole revealed an approximate 2" by 4" opening in the top of the sewer pipe just before it connects with the manhole. The City repaired the opening in the pipe in 2012 by covering the pipe's hole with cement and surrounding the outside of the pipe with brick. The City's former Service Department Superintendent, Scott Reese ("Reese"), additionally determined that the wood retaining wall on the property needed to be repaired and the sinkhole should be filled with a cement-based "flowable fill" material, rather than dirt. Unlike dirt, flowable fill can enter all open cavities of an erosion hole. The flowable fill then hardens, thereby providing stability and preventing soil displacement from behind the retaining wall.

{¶ 4} Then in 2016, a second sinkhole developed on the hillside behind the retaining wall on the property. Smith alleges that the City's 2012 repair of the manhole located on his property subsequently caused the second sinkhole, which damaged his property, breakwall, boathouse, landscaping, and steps.

{¶ 5} Smith alleges that the City, as the owner of the easement, has breached its contractual duty to make the repairs necessary to prevent the easement from damaging his property. Smith further alleges that the City is not immune from liability under R.C. 2744.01(G)(2)(d) for the damages because the damage was caused by the negligent performance of the City's employees for "proprietary functions," including the "maintenance, destruction, operation, and upkeep of a sewer system." The City responded, arguing immunity under R.C. Chapter 2744.

{¶ 6} After the conclusion of discovery, the City moved for summary judgment, contending that its operation and upkeep of the sewer system did not cause damage to the property. The City argued that Smith's breach of easement claim is "an attempt to repackage his negligence claim as a breach of contract." The City further argued that even if it did damage the property, it is immune from liability under R.C. Chapter 2744.[1] Smith opposed the City's motion for summary judgment. In his opposition, Smith argued that as the owner of the easement, the City was contractually responsible to Smith for making repairs of the use if, using Smith's allegation, the "easement" damages his property. According to Smith, the City's failure to properly make repairs in 2012 caused the leak in the sewer, which caused the sinkhole and damage to the property. Smith further argued that City is not immune from liability because the City failed to maintain the sewer, which is a proprietary function.

---

[1] The City also argued that Smith's claims were barred by the applicable statute of limitations, but this argument cannot be raised in the interlocutory appeal of the denial of political subdivision immunity.

{¶ 7} The City responded to Smith's opposition, arguing that the supplies, materials, personnel, and resources selected by the City did not cause damage to the property. Moreover, even if it had caused damage, the City established that it was immune from liability for such discretionary acts under R.C. 2744.03(A)(5). The next day, the trial court issued its decision, denying the City's motion for summary judgment. The court stated:

> Th[is] court has reviewed [the City's] motion, [Smith's] brief in opposition, and [the City's] reply brief. In viewing the facts and construing the evidence in the light most favorable to [Smith] as the non-moving party, the court finds that there are genuine issues of material fact concerning whether [the City] was negligent in performing a proprietary function of maintaining and operating its storm sewer system under R.C. 2744.02(B)(2) and whether such negligence proximately caused damages to plaintiff. *Riscatti v. Prime Properties Ltd. Partnership*, 2012-Ohio-2921. As such, [the City] is not entitled to judgment as a matter of law and summary judgment is not proper under Civ.R. 56(C). The court further finds that the discovery rule applies to this claim. *Cohen v. City of Bedford Heights*, 2015-ohio-1308. Genuine issues of material fact exist as to whether [Smith] knew or by the exercise of reasonable diligence should have known that he was injured by the conduct of [the City].
>
> The court further finds that there are genuine issues of material fact concerning whether [the City] had a duty under the easement to maintain the storm sewer and to prevent damage to the servient estate. *Market Enterprises v. Summerville,* 2002-ohio-3692. *See also,* 36 Ohio Jurisprudence 3d (1982) 464, Easements and Licenses, Section 60.

{¶ 8} It is from this order that the City appeals, raising the following single assignment of error for review:

## Assignment of Error

The trial court erred by denying summary judgment to the [City] which denied the City's defense of statutory immunity pursuant to R.C. Chapter 2744.

**{¶ 9}** The City views Smith's breach of easement claim as part of his negligence–nuisance claim and argues its motion for summary judgment conclusively established that the sewer system itself was not the cause of the alleged damage to the property. As a result, it contends that the sole issue this court "must examine is whether the City is immune from liability pursuant to R.C. Chapter 2744 of the Ohio Revised Code for its discretionary decision to use flowable fill in repairing the First Erosion Hole in 2012."

**{¶ 10}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

**{¶ 11}** Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

<u>Breach of Easement</u>

**{¶ 12}** The City contends that Smith's breach of easement–contract claim is really a tort claim for damages. Smith, on the other hand, contends that the "easement at issue is a contract" and the City has no immunity under R.C. 2744.09(A). Because Smith's complaint has separately alleged that "[a]s the owner of the easement, [the City] has a duty to make such repairs as are necessary to prevent the easement from damaging the [p]roperty" and further alleges that the City has breached the easement by failing to prevent the easement from damaging the property, we will analyze this claim of Smith's complaint as separate from his negligence–nuisance claim for purposes of this interlocutory appeal.

**{¶ 13}** The breach of an easement claim can be analyzed as a breach of contract claim. *Stefanich v. Am. Elec. Power Co.*, 5th Dist. Licking No. 07 CA 0045, 2007-Ohio-6108, ¶ 27. "To establish a claim for breach of contract, the plaintiff must show the existence of a contract, performance by the plaintiff under the terms of that contract, breach by the defendant, and damage or loss to the plaintiff." *Carey*

*v. Down River Specialties, Inc.*, 8th Dist. Cuyahoga No. 103595, 2016-Ohio-4864, ¶ 14, citing *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 2002-Ohio-443, 771 N.E.2d 874 (10th Dist.).

{¶ 14} We note, however, that R.C. Chapter 2744 does not apply to contract claims against a political subdivision.

> "R.C. Chapter 2744 generally shields political subdivisions from *tort liability* in order to preserve their fiscal integrity." (Emphasis added.) *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 15, 998 N.E.2d 437. R.C. 2744.09(A) specifies that R.C. Chapter 2744 "does not apply to, and shall not be construed to apply to * * * [c]ivil actions that seek to recover damages from a political subdivision or any of its employees for *contractual* liability." (Emphasis added.) "R.C. 2744.09(A) has been consistently interpreted to mean that political subdivisions cannot claim governmental immunity for breach of contract claims." *See E. Liverpool v. Buckeye Water Dist.*, 7th Dist. Columbiana App. Nos. 11 CO 41 and 11 CO 42, 2012-Ohio-2821, ¶ 47, 972 N.E.2d 1090, and cases cited there; *see also Emergency Med. Transport, Inc. v. Massillon*, 5th Dist. Stark No. 2010CA00176, 2011-Ohio-446, ¶ 28, ("Ohio Revised Code Chapter 2744 grants immunity to political subdivisions and their employees from tort claims, but has no application to claims for breach of contract"); C*obb v. Mantua Twp. Bd. of Trustees*, 11th Dist. Portage No. 2003-P-0112, 2004-Ohio-5325, ¶ 33 ("R.C. Chapter 2744 grants immunity to political subdivisions and their employees from tort claims. However, R.C. Chapter 2744 does not provide immunity from claims for breach of contract").

*Today & Tomorrow Heating & Cooling v. Greenfield*, 4th Dist. Highland No. 13CA14, 2014-Ohio-239, ¶ 14.

{¶ 15} Smith raised R.C. 2744.09(A) in his motion for summary judgment, arguing that Euclid is not immune from a breach of easement claim. When denying the City's motion for summary judgment, the trial court found genuine issues of material fact concerning whether the City has a duty under the easement to maintain

the storm sewer and prevent damage to Smith's property. The court's disposition of the breach of easement claim was addressed separately from its disposition of the negligence–nuisance claim. When addressing the negligence–nuisance claim, the court specifically referenced R.C. 2744.02(B)(2), and the negligence in performing a proprietary function.

{¶ 16} Because the alleged breach of easement claim can be construed as a breach of contract claim, R.C. 2744.09(A) would preclude immunity from applying to this cause of action. Thus, we lack jurisdiction, in this interlocutory appeal, to consider the propriety of the trial court's denial of the City's motion for summary judgment with respect to Smith's breach of easement cause of action. *See Riscatti*, 137 Ohio St.3d 123, at ¶ 20 ("Although our prior decisions have interpreted R.C. 2744.02(C) broadly in favor of early appeal, they have always been tethered directly to the defense of immunity, not to other defenses.) *See also Berdysz v. Boyas Excavating, Inc.*, 8th Dist. Cuyahoga No. 107109, 2019-Ohio-1639, ¶ 10-15.

{¶ 17} As a result, we will address solely the applicability of political subdivision immunity to the negligence–nuisance cause of action because we have jurisdiction to review this claim.

## Political Subdivision Immunity

{¶ 18} A determination of whether a political subdivision is immune from tort liability under R.C. Chapter 2744 involves a three-tiered analysis. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7, citing *Greene*

*Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 2000-Ohio-486, 733 N.E.2d 1141.

> The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. [*Greene,* 89 Ohio St.3d 551, 556-557, 2000-Ohio-486, 733 N.E.2d 1141]; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland,* 83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610.

> The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* at 28, 697 N.E.2d 610.
> * * *

> If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense to that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Id.* at ¶ 7-9.

## Negligence–Nuisance

{¶ 19} Here, the parties do not dispute that the City is a political subdivision, and thus, qualifies for general immunity under R.C. 2744.02(A). The City argues that none of the exceptions listed in R.C. 2744.02(B) apply to abrogate immunity because its repairs to the first erosion hole were repairs to the property itself, not the sewer system. Smith, on the other hand, argues that the City is subject to liability under the exception listed in R.C. 2744.02(B)(2) because its employees negligently performed the following proprietary function: "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" R.C. 2744.01(G)(2)(d).

{¶ 20} We note that Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers. *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, ¶ 18, citing *Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 148 N.E. 846 (1925). Indeed, when a municipality does construct or maintain sewers, "it becomes its duty to keep them in repair and free from conditions which will cause damage to private property." *Doud v. Cincinnati*, 152 Ohio St. 132, 137, 87 N.E.2d 243 (1949). Thus, the municipality becomes liable "in the same manner and to the same extent as a private person under the same circumstances." *Id.,* citing *Portsmouth.*

{¶ 21} Under the three-tiered analysis, the City is subject to liability under R.C. 2744.02(B)(2) because its maintenance of the sewer is a proprietary function under R.C. 2744.01(G)(2)(d). Therefore, we must next address the City's argument that it has reinstated immunity from liability because the actions it took to repair the sewer in 2012 fall within the "exercise of judgment" exception in R.C. 2744.03(A)(5), which provides that a "political subdivision is immune from liability if the * * * loss to * * * property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 22} The City contends that its attempt to fix the outflow sewer pipe in 2012, including its decision to use flowable fill, is protected from liability as a

reinstatement of immunity because that decision was a use of judgment and discretion in how to use supplies and resources under R.C. 2744.03(A)(5). The City relies on Reese's testimony, who exercised his discretion in determining "whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources."

{¶ 23} Reese testified that he believed that the 2012 sinkhole was caused by a leak in the sewer pipe. He made the decision to repair the first erosion hole with a cement-based "flowable fill" material, rather than dirt. He made this decision because he believed the flowable fill would replace the soil that eroded away and better plug the open cavities in the hole, helping with future erosion. According to Reese, the flowable fill hardens, provides stability, and prevents soil erosion and slippage from behind the retaining wall. He further concluded that the use of flowable fill would provide additional stability for the retaining wall and assist with preventing additional erosion or slippage. Reese inspected the work after it was completed and determined it was done correctly and in a workmanlike manner.

{¶ 24} Smith maintains that the City should have done more than just fill the sinkhole with "flowable fill." His experts opined that before pouring "flowable fill" into the sinkhole, the City should have prepared a proper base beneath the "flowable fill." The experts opined that by failing to properly prepare the base of the sinkhole and pouring "flowable fill" on top of eroded and unstable soils, the City only masked the problem until the sinkhole became visible again years later.

**{¶ 25}** This court has previously held that "decisions involving the proper maintenance of the sewer or drainage system [are] a proprietary act, which [are] mandatory and not discretionary. These decisions do not involve a high degree of discretion. Rather they involve routine inspection and maintenance." *Nelson* at ¶ 30. Here, Reese inspected the sewer, found a hole in the sewer and determined to use "flowable fill" to repair the sinkhole. Smith's experts opined the sinkhole on Smith's property occurred as a result of the City only masking the problem by using "flowable fill" without a stable base. As a result, the discretionary acts defense in 2744.03(A)(5) is not available to reinstate immunity to the City for the resulting damages.

**{¶ 26}** Based on the foregoing, when construing this evidence in a light most strongly in favor of Smith, genuine issues of material fact exist as to whether the City exercised ordinary care in maintaining and repairing the sewer and whether the City is entitled to political subdivision immunity.

**{¶ 27}** Therefore, the sole assignment of error is overruled.

**{¶ 28}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent out to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
RAYMOND C. HEADEN, J., CONCUR