[Cite as *Howard v. Columbus*, 2024-Ohio-5181.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Keri Howard et al., | : | |
| Plaintiffs-Appellees, | : | No. 24AP-79 (C.P.C. No. 23CV-1139) |
| v. | : | (REGULAR CALENDAR) |
| City of Columbus, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 29, 2024

**On brief:** *Zach Klein*, City Attorney, and *Aaron D. Epstein* for appellant.
**Argued:** *Aaron D. Epstein.*

**On brief:** *Zipkin Whiting Co., L.P.A., Lewis A. Zipkin,* and *Kevin M. Gross* for appellee.
**Argued:** *Kevin M. Gross.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, P.J.

{¶ 1} Defendant-appellant, City of Columbus ("City"), appeals from a January 23, 2024 decision and entry from the Franklin County Court of Common Pleas granting in part and denying in part its motion for judgment on the pleadings. For the reasons that follow, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On February 21, 2023, plaintiffs-appellees, Keri and Joe Howard, filed a complaint against the City. In the complaint, Mrs. Howard asserted a cause of action for

"Premises Liability Physical Defect" (Count One), and Mr. Howard alleged a claim of loss of consortium (Count Two). The following facts were alleged in the complaint.

{¶ 3} In February 2021, Mrs. Howard was enrolled at the Ohio Fire Academy to become an emergency medical technician ("EMT"). (Feb. 21, 2023 Compl. at ¶ 9.) On February 27, 2021, Mrs. Howard went to Columbus Fire Station 1 ("Fire Station"), located in Columbus, Ohio, for a ride-along as part of her EMT training. (Compl. at ¶ 7, 11-12.) Upon arrival at the Fire Station, she was escorted up three flights of stairs to a table where several firefighters were congregating. (Compl. at ¶ 13.) After conversing with the firefighters, the Fire Station's alarms went off and some of the firefighters went down the fire pole. (Compl. at ¶ 15.) Mrs. Howard asked if she should go on the run, to which the unidentified Fire Station supervisor responded, "If you want to go on the ride-along, you should." (Compl. at ¶ 19.) Mrs. Howard tore her Achilles tendon as well as broke several bones in her toes, foot, ankle, and leg while attempting to descend the fire pole. (Compl. at ¶ 20-21.)

{¶ 4} On August 10, 2023, the City filed an answer to the complaint. On October 25, 2023, the City, pursuant to Civ.R. 12(C), filed a motion for judgment on the pleadings alleging that, as a political subdivision, it was immune from liability. On November 8, 2023, the Howards filed a memorandum in opposition arguing that, as alleged in the complaint, the City was not entitled to immunity at this time. A reply brief was filed on November 15, 2023.

{¶ 5} On January 23, 2024, the trial court granted in part and denied in part the City's motion for judgment on the pleadings. The trial court neatly set out the seven legal theories of premises liability alleged in the complaint:

1) The fire pole is a physical defect, which the city and its employees negligently designed, maintained, and constructed. Id. at ¶¶33, 37.
2) Defendants failed to warn [Mrs. Howard] not to go down the fire pole.
3) Defendants were negligent due to the absence of any warning or safety equipment appended to the fire pole or near it.
4) Defendant failed to train [Mrs. Howard] how to go down the fire pole.
5) [Mrs. Howard's] injuries were caused by the negligent training and supervision of Defendant, and by physical defects including the presence of an actual fire pole instead of a slide and/or the failure to have safety cushions at the bottom of the fire pole and other safety equipment.

6) The fire pole is a physical defect because it has caused fireman to suffer workplace injuries.

7) Defendant or its agents, employees, and representatives, were negligent and/or created and/or maintained a physical defect by allowing a dangerous condition to exist with a total disregard to the safety and well-being of [Mrs. Howard].

(Sic passim.) (Jan. 23, 2024 Decision at 2.)

{¶ 6} The trial court first found that, as a political subdivision under R.C. 2744, the City was generally immune from tort liability. (Decision at 5.) The trial court then reviewed whether Mrs. Howard's various premises liability theories fell under any of the statutory exceptions to political subdivision immunity. The trial court concluded that the fire pole was not a physical defect and, therefore, the City was entitled to judgment on the pleadings as to that particular claim. (Decision at 5.) The trial court then considered the appellees' theory that the absence of safety equipment at the base of the fire pole could constitute a "physical defect" under R.C. 2744.02(B)(4). While the trial court found that the absence of safety equipment or padding could constitute a physical defect, because there were no allegations in the complaint or answer stating that the City, in fact, "used its judgment or discretion in deciding not to install any safety equipment at the landing point of the firepole," the City was not able to demonstrate entitlement to the discretionary defense set forth in R.C. 2744.03(A)(5) at that time. (Decision at 6.) Relevant to the instant appeal, the trial court also found that the City was not immune to allegations of negligence of its employees because it "ha[d] found that R.C. 2744.02(B)(4) potentially applies." (Decision at 6.) Finally, the trial court concluded that the loss of consortium claim was preserved as it was a derivate claim and dependent on the existence of a primary cause of action. (Decision at 6-7.)

{¶ 7} The City filed a notice of appeal on January 29, 2024.

## II. ASSIGNMENT OF ERROR

{¶ 8} Appellants assign the following as trial court error:

> The trial court erred when it denied the City's claim for immunity from the Plaintiffs-Appellees (sic.) claim for negligent training.

### III. FINAL APPEALABLE ORDER

{¶ 9} As an initial matter, we must address whether the decision and entry at issue constitutes a final appealable order.

{¶ 10} Article IV, Section 3(B)(2) of the Ohio Constitution restricts an appellate court's jurisdiction to the review of final orders of lower courts. *Estate of Reardon v. OhioHealth Corp.*, 10th Dist. No. 23AP-148, 2024-Ohio-48, ¶ 7, citing *Simek v. Orthopedic & Neurological Consultants, Inc.*, 10th Dist. No. 17AP-671, 2019-Ohio-3901, ¶ 42, citing *Farmers Mkt. Drive-In Shopping Ctrs., Inc. v. Magana*, 10th Dist. No. 06AP-532, 2007-Ohio-2653, ¶ 10. The Supreme Court of Ohio has stated, "an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction." *Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, ¶ 13. Even in cases where the parties fail to raise the jurisdictional issue, a reviewing court should dismiss the matter sua sponte if it is not taken from a final appealable order or judgment. *Mullinix v. Mullinix*, 10th Dist. No. 22AP-49, 2023-Ohio-1053, ¶ 13, citing *Whitaker-Merrell Co. v. Geupel Constr. Co.*, 29 Ohio St.2d 184, 186 (1972).

{¶ 11} Generally, a trial court's order is only final and appealable when it conforms with the requirements of R.C. 2505.02(B) and, if applicable, Civ.R. 54(B). *Tonti Homes Corp. v. Siculan*, 10th Dist. No. 22AP-162, 2022-Ohio-3067, ¶ 7, citing *Oakley v. Ohio State Univ. Wexner Med. Ctr.*, 10th Dist. No. 18AP-843, 2019-Ohio-3557, ¶ 10. The denial of a motion for judgment on the pleadings or motion for summary judgment typically does not constitute a final appealable order. *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, ¶ 21; *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 9.

{¶ 12} The General Assembly passed R.C. Chapter 2744, also known as Ohio's Political Subdivision Tort Liability Act, in response to judicial abrogation of the common law immunity of political subdivisions. *Riscatti* at ¶ 15, citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 558 (2000). R.C. Chapter 2744 provides a general shield to political subdivisions from tort liability in order to preserve their fiscal integrity. *Id.*, citing *Hubbell* at ¶ 23; R.C. 2744.02(A)(1). The Supreme Court explained the legislature's purpose as well as the importance of this statutory scheme writing "the protections afforded to political subdivisions and employees of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local governments and the

continued ability of local governments to provide public peace, health, and safety services to their residents." *Summerville v. Forest Park*, 128 Ohio St.3d, 2010-Ohio-6280, ¶ 38, quoting Am.Sub.H.B. No. 176, Section 8, 141 Ohio Laws, Part I, 1733.

{¶ 13} R.C. 2744.02(C), directs that "[a]n order that denies a political subdivision or an employee of a political subdivision *the benefit of an alleged immunity* from liability as provided in this chapter or any other provision of the law is a final order." (Emphasis added.) The Supreme Court explained why the early determination of political subdivision immunity is vital to both party's interest and judicial economy.

> If the appellate court holds that the political subdivision is immune, the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees. Alternatively, if the appellate court holds that immunity does *not* apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.

(Emphasis sic.) (Further quotation and citation omitted.) *Summerville* at ¶ 39.

{¶ 14} Given the General Assembly's purpose in enacting R.C. Chapter 2744, the Supreme Court has interpreted R.C. 2744.02(C) broadly when the claim is "tethered directly to the defense of immunity, not to other defenses." *Riscatti* at ¶ 20, citing *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, ¶ 13. "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell* at syllabus.

{¶ 15} To be sure, a political subdivision's right to appeal is not absolute as the decision must be one grounded in a claim of immunity. *See, e.g.*, *Riscatti* at ¶ 19 (finding the political subdivision's motion for judgment on the pleadings based on a statute of limitations defense was not a final appealable order even though it arose along with an immunity claim); *see also Hale v. Toth*, 8th Dist. No. 112030, 2023-Ohio-2954, ¶ 11 (internal quotation omitted) ("appellate review under R.C. 2744.02(C) is limited to review of only alleged errors involving the denial of the benefit of an alleged immunity from

liability and does not authorize appellate courts to otherwise review alleged errors that do not involve claims of immunity").

{¶ 16} While Mrs. Howard's complaint identifies a single premises liability cause of action, it includes multiple allegations that could potentially demonstrate the City's liability. The City's motion for judgment on the pleadings was grounded in the belief that all the Howards' various theories of premises liability were barred under R.C. 2744. While the trial court found that the City was entitled to immunity as to the Howards' claim that the fire pole constituted a physical defect, it denied the City's motion as to the absence of safety equipment theory of premises liability as it could constitute a physical defect under R.C. 2744.02(B)(4). The trial court explained that since there were no allegations in the complaint or answer stating that the City "used its judgment or discretion in deciding not to install any safety equipment at the landing point of the firepole," it was not able to demonstrate entitlement to the discretionary defense set forth in R.C. 2744.03(A)(5) at that time. (Decision at 6.)

{¶ 17} Concerning the negligent training and supervision theory of premises liability, the trial court denied the City's immunity claim finding that R.C. 2744.02(B)(4) could apply. (Decision at 6.) By stating that the City was not "entitled to judgment on the pleadings on th[e] basis" of immunity, the trial court's denial of the City's motion as to that particular claim, at the very least, denied it the benefit of immunity. *See Hubbell* at ¶ 27 ("we hold that when a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and thus is a final, appealable order pursuant to R.C. 2744.02(C)"). Other Ohio courts have found an order from which employees of a political subdivision appeal was a final, appealable order, even though the trial court denied the motion because factual issues existed that prevented a final determination as to immunity. *See, e.g., Rural Bldg. of Cincinnati LLC v. Mercer*, 1st Dist. No. C-160760, 2017-Ohio-7226, ¶ 12. There is no doubt that the trial court could have provided more explanation to support its denial of immunity under the negligent training and supervision theory of immunity. However, Ohio courts have found that even decisions from the trial court that do not explain the basis for denying a motion for judgment on the pleadings on sovereign immunity grounds can

constitute a final, appealable order as it denies the political subdivision the benefit of immunity. *See, e.g., DiGiorgio v. Cleveland*, 8th Dist. No. 95945, 2011-Ohio-5824, ¶ 15.

{¶ 18} Absent appellate review at this time, the City would be required to litigate the additional negligent training and supervision theory of premises liability that is factually and legally distinct from the lack of safety equipment theory. This would contradict the overriding purpose of R.C. 2744 and deprive the City of the benefit of immunity. Therefore, the order is a final, appealable order under R.C. 2744.02(C).

## IV. STANDARD OF REVIEW

{¶ 19} A motion for judgment on the pleadings is governed by Civ.R. 12(C), which directs "[a]fter the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings." This court has described a motion for judgment on the pleadings as a " 'belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted.' " *Bailey v. Ohio Dept. of Dev. Disabilities*, 10th Dist. No. 23AP-542, 2024-Ohio-1696, ¶ 7, quoting *Tran v. State*, 10th Dist. No. 09AP-587, 2009-Ohio-6784, ¶ 10. When ruling on a motion for judgment on the pleadings, the trial court may consider both the answer and the complaint. *Bailey* at ¶ 7, citing *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 8.

{¶ 20} Pursuant to Civ.R. 12(C), a dismissal is appropriate when, after construing all material allegations in the complaint as true, "with all reasonable inferences to be drawn therefrom in favor of the non-moving party[,] [the court] finds beyond doubt that the non-moving party could prove no set of facts in support of his claim that would entitle him to relief." *Rhoads v. Olde Worthington Business Assn.*, 10th Dist. No. 23AP-324, 2024-Ohio-2178, ¶ 32, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Granting a Civ.R. 12(C) motion requires a finding that no material factual issues exist and that the movant is entitled to judgment as a matter of law. *Id.*

{¶ 21} We review a trial court's ruling on a motion for judgment on the pleadings de novo. *Bailey* at ¶ 7, citing *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

## V. LEGAL ANALYSIS

### A. Appellants' Sole Assignment of Error

{¶ 22} In the City's sole assignment of error, it argues that the trial court erred by denying its claim for immunity as to the appellees' negligent training and supervision theory of premises liability.

{¶ 23} Preliminarily, we must address the appellees' argument that this appeal is a delay tactic and that they never asserted a negligent training argument. To be sure, while appellees have not filed a separate cause of action for negligent training and supervision, at least one of its premises liability theories is grounded in the negligent supervision or training of firefighters before Mrs. Howard descended the fire pole. *See* Compl. at ¶ 20 ("Howard had no training or experience going down a fire pole; she was seriously injured after she went down the fire pole at Columbus Fire Station 1"); *Id*. at ¶ 32 ("Columbus and its agents, employees, and representatives had a duty but failed to train Howard how to go down the fire pole"); *Id*. at ¶ 34 ("Howard's injuries were caused by the negligent training and supervision of Columbus and its agents, employees, and representatives and by physical defects within the Columbus Fire Station 1 premises, including the presence of a functional fire pole instead of a slide and/ or the failure to have safety cushions at the bottom of the fire pole and other safety equipment."). We agree with the trial court's conclusion that the appellees have presented multiple potential claims of premises liability, at least one of which includes a theory grounded in the City's negligent training and supervision. (Decision at 2.) Accordingly, we must examine whether the City is immune from the appellees' negligent training and supervision theory of premises liability.

{¶ 24} R.C. Chapter 2744 sets forth a three-tier test for resolving whether a political subdivision is immune from tort liability. *Williams v. Columbus*, 10th Dist. No. 22AP-489, 2023-Ohio-1451, ¶ 10. The first tier is the general rule that a political subdivision and its employees are immune from liability incurred when performing either a governmental function or a propriety function. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 15; R.C. 2744.02(A)(1). R.C. 2744.01(F) defines a "political subdivision" in relevant part as "a municipal corporation * * * or other body corporate and politic response for governmental activities in a geographic area smaller than the state." A "governmental function" includes "[t]he provision or nonprovision of police, fire, emergency medical,

ambulance, and rescue services or protection" and "construction, reconstruction, repair, renovation, maintenance, and operation of buildings that are used in connection with the performance of a governmental function." R.C. 2744.01(C)(2)(a), (g). Generally, R.C. Chapter 2744 affords political subdivisions a complete defense to a negligence cause of action. *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 98 (1999). However, immunity under R.C. Chapter 2744 is not absolute. *Doe v. Greenville City School*, 171 Ohio St.3d 763, 2022-Ohio-4618, ¶ 10, citing *Hill v. Urbana*, 79 Ohio St.3d 130 (1997).

{¶ 25} The second tier of analysis requires a court to determine if any of the five exceptions to immunity set forth in R.C. 2744.02(B) are applicable to reinstate liability to the political subdivision. *Pelletier* at ¶ 15. If any of the R.C. 2744.02(B) exceptions are applicable, immunity can be reinstated under the third tier of analysis "if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies." *Doe* at ¶ 11.

{¶ 26} In the case sub judice, the first tier is easily satisfied as the City is appropriately classified as a political subdivision within the meaning of R.C. 2744. *Williams* at ¶ 15. Turning to the second tier, as the City is a political subdivision engaged in a governmental function, it is entitled to immunity under R.C. 2744.02(A)(1) unless one of the exceptions under R.C. 2744.02(B) applies to the claims raised in the complaint. The appellees argue that R.C. 2744.02(B)(4) provides an exception for physical defects, which reads:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

{¶ 27} Stated another way, to demonstrate the R.C. 2744.02(B)(4) physical-defect exception, "a plaintiff must allege that the injury (1) resulted from employee negligence; (2) occurred within or on the grounds of buildings used in connection with a governmental function; and (3) resulted from physical defects within or on the grounds of buildings used

in connection with a governmental function." *Fry v. Cincinnati*, 1st Dist. No. C-210482, 2022-Ohio-1248, ¶ 6, citing *R.K. v. Little Miami Golf Ctr.*, 1st Dist. No. C-130087, 2013-Ohio-4939, ¶ 15.  The physical defect exception is only applicable if all three prongs are satisfied.  *Fry* at ¶ 6, citing *Plush v. Cincinnati*, 1st Dist. No. C-200030, 2020-Ohio-6713, ¶ 29; *O'Brien v. Great Parks of Hamilton Cty.*, 1st Dist. No. C-190697, 2020-Ohio-6949, ¶ 13.

{¶ 28} While the term "physical defect" is not statutorily defined, in the context of R.C. 2744.02(B)(4), Ohio courts have defined it as " ' "a perceivable imperfection that diminishes the worth or utility of the object at issue." ' " *Lewis v. Ayersville Local School Dist.*, 3d No. 4-23-03, 2023-Ohio-3685, ¶ 20, quoting *Shaw v. Washington Court House City School Bd. of Edn.*, 12th Dist. No. CA2022-04-004, 2022-Ohio-4226, ¶ 19, quoting *Nicholas v. Lake Cty.*, 11th Dist. No. 2012-L-140, 2013-Ohio-4294, ¶ 23.  Ohio courts have recognized that when an instrumentality that caused a plaintiff's injury operates " 'as intended or d[oes] not contain any perceivable imperfection that impaired or diminished its utility' " the instrumentality does not constitute a physical defect.  *Shaw* at ¶ 20, quoting *Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22, citing *Hamrick v. Bryan City School Dist.*, 6th Dist. No. WM-10-014, 2011-Ohio-2572, ¶ 29; *see also Steigerwald v. Berea*, 8th Dist. No. 112933, 2024-Ohio-2260, ¶ 29.  Similarly, Ohio courts have recognized that the absence of certain equipment can constitute a physical defect.  *Doe* at ¶ 28; *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250; *Jones* at ¶ 22 (concluding a genuine issue of material fact existed whether the absence of reflective tape and lights around an open orchestra pit could constitute a physical defect).  *DeMartino v. Poland Local School Dist.*, 7th Dist. No. 10 MA 19, 2011-Ohio-1466 (finding the absence of the required discharge chute was a physical defect after a lawnmower ejected a metal object striking a student in the head).

{¶ 29} The appellees allege the City was negligent in its training and supervision of Mrs. Howard.  However, an employee's "method or use" is not a physical defect under R.C. 2744.02(B)(4).  (Internal quotation omitted.)  *Shields v. Plummer*, 10th Dist. No. 20AP-214, 2020-Ohio-5449, ¶ 17, 20; *O'Brien* at ¶ 25; *Contreraz v. Bettsville*, 3d Dist. No. 13-10-48, 2011-Ohio-4178, ¶ 40 ("failure to appropriately train * * * and negligent and/or reckless hiring and training * * * clearly do not concern any physical defect regarding the premise");

*Lewis* at ¶ 20. In *Lewis*, several members of the school's track and field team were warming up for a meet. *Lewis* at ¶ 4. During warm-ups, a student accidentally struck the plaintiff in the head with an errant shotput causing serious injuries. *Id.* The plaintiff and his family filed a complaint against the school, coach, student, and parent of the student. *Id.* at ¶ 4. The school filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), claiming immunity under R.C. 2744, which the trial court granted as to the school and coach. *Id.* at ¶ 6. Third District Court of Appeals affirmed finding that the complaint did not include a claim that the premises was defective or that lack of safety equipment or devices on the school premises created a physical defect. *Id.* at ¶ 24. The *Lewis* court wrote that the focus of the complaint was that the school failed to supervise the track team as well as the lack of safety rules, protocols, and precautions for the athletes to follow. *Lewis* at ¶ 24. The *Lewis* court found that lack of supervision or protocols does not equate to physical defect exception. *Id.*

{¶ 30} The appellees attempt to bootstrap a negligent training and supervision claim theory within a premises liability cause of action by positing that the term "negligence of their employees" in R.C. 2744.02(B)(4) is broad and can include negligent training or supervision when there is an absence of safety equipment. In support of its argument, the appellees cite language in the Supreme Court of Ohio's plurality decision in *Doe*. A brief review is instructive.

{¶ 31} In *Doe*, the plaintiffs were allegedly severely burned when a bottle of isopropyl alcohol caught fire and exploded in their science classroom. *Id.* at ¶ 2. The students filed a complaint against the school claiming that it "failed to provide proper safety equipment, 'especially, but not limited to, a fire extinguisher inside the classroom,' failed to ensure that there were proper safety features and protocols in place, failed to properly supervise and protect them, and to the extent that Greenville exercised discretion, Greenville did so 'maliciously, in bad faith and in a reckless and wanton manner.' " *Id.* at ¶ 2. The Supreme Court accepted the case for the sole proposition of law: "whether the absence of a fire extinguisher or other safety equipment within a building of a political subdivision could be a physical defect such that an exception to immunity exists under R.C. 2744.02(B)(4)." *Id.* at ¶ 1.

{¶ 32} In a plurality decision, the Supreme Court found that "the absence of a fire extinguisher or other safety equipment within a science classroom could be a physical

defect such that an exception to immunity could exist under R.C. 2744.02(B)(4)." *Id* at ¶ 27. The *Doe* plurality concluded that "the students have alleged that their injuries were caused by the negligent supervision of the science teacher and the lack of a fire extinguisher and other safety equipment in the classroom. We cannot say, therefore, that the Second District erred by affirming the trial court's denial of Greenville's motion to dismiss and finding that the students have alleged sufficient facts that if proven, demonstrate that R.C. 2744.02(B)(4) applies." *Doe* at ¶ 28.

{¶ 33} While the scope and impact of Doe has yet to be fully realized, we note that as a general matter, a plurality decision is not considered binding authority. (Further citations omitted.) *Omni Energy Group, LLC v. Vendel*, 10th Dist. No. 23AP-361, 2024-Ohio-2439, ¶ 24, fn. 4. Regardless, the factual allegations in *Doe* are plainly distinguishable from the instant case. First, the negligent supervision claims in the *Doe* complaint were directly related to the absence of a fire extinguisher, safety equipment, and safety protocols. *See Doe v. Greenville City Schools*, 2d No. 2020-CA-4, 2021-Ohio-2127, ¶ 20, fn. 4 (writing that the complaint alleges "[the teacher and principal] recklessly or wantonly failed to equip the science classroom, in which Jane Doe 1 and Jane Doe 2 were injured, with a fire extinguisher or other appropriate safety equipment, and similarly, that [the teacher and principal] recklessly or wantonly failed to enact appropriate protocols for the supervision and protection of Jane Doe 1 and Jane Doe 2 during classroom activities"). Here, the negligent training and supervision theory of premises liability concerns the City's failure to supervise and train Ms. Howard when she descended the fire pole. This allegation is wholly unrelated to any alleged negligence by the City to provide padding or safety equipment at the base of the fire pole.

{¶ 34} Ohio courts have consistently interpreted the first prong of R.C. 2744.02(B)(4) to require the negligence of the political subdivision to be causally connected to the creation or maintenance of the hazardous condition. *See, e.g., Johnson v. Cincinnati Metro. Auth.*, 1st Dist. No. C-210240, 2022-Ohio-26 (finding a genuine issue of material fact existed whether the political subdivision negligently caused a physical defect on its grounds by failing to repair a loose floor mat); *Leasure v. Adena Local School Dist.*, 4th Dist. No. 11CA3249, 2012 Ohio App. LEXIS 2686, *28, 30 (June 28, 2012) (finding the "physical defect" exception to immunity of R.C. 2744.02(B)(4) could apply as the

"negligence complaint is grounded upon appellant's failure to properly set up the bleachers once the decision had been made to design, install and construct them"); *Diaz v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. No. 92907, 2010-Ohio-13, ¶ 13 (finding a political subdivision's failure to maintain the premises could constitute a physical defect when a window struck the plaintiff's daughter). The dissent in *Doe*, 2022-Ohio-4618, written by then-Justice Kennedy, and joined by Justices DeWine and Donnelly, reached a similar, albeit broader, conclusion writing "the negligent-supervision claim is plainly not based on a physical defect—supervision is not a material or tangible thing. That allegation therefore cannot support the argument that the exception to immunity for physical defects within or on the grounds of governmental buildings applies." (Kennedy, J., dissenting.) *Id*. at ¶ 37.

{¶ 35} In the case sub judice, any alleged failure to train or supervise Mrs. Howard to descend the fire pole is causally unrelated to the lack of padding or safety equipment at the base of the fire pole. If the lack of padding or safety equipment created a physical defect, any training or supervision on navigating the hazard would not remove the risk the physical defect posed. Here, the appellees' complaint fails to allege any set of facts under which they could demonstrate that the R.C. 2744.02(B)(4) exception to immunity could apply to their negligent training and supervision theory of premise liability. Because the claims of negligent training and supervision are causally unrelated to the alleged physical defect at issue, the trial court erred by denying the City's motion for judgment on the pleadings as to that particular claim. The City's sole assignment of error is sustained, and this matter is remanded for further proceedings as to the remaining causes of action.

## VI. CONCLUSION

{¶ 36} Having sustained the City's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas.

*Judgment reversed*;
*cause remanded*.

DORRIAN and BOGGS, JJ., concur.

————————————