[Cite as *Nicholas v. Lake Cty.*, 2013-Ohio-4294.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| NORMA NICHOLAS, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2012-L-140** |
| LAKE COUNTY JUVENILE COURT, | : | |
| Defendant, | : | |
| LAKE COUNTY, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 11 CV 003182.

Judgment: Affirmed.

*William J. Novak* and *Scott D. Perlmuter,* Novak Pavlik Deliberato, L.L.P., Tower City Center, Skylight Office Tower, 1660 West Second Street, Suite 950, Cleveland, OH 44113-1498 (For Plaintiffs-Appellees).

*Richard A. Williams* and *Susan S.R. Petro*, 338 South High Street, 2nd Floor, Columbus, OH 43215 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Lake County, appeals from the December 4, 2012 judgment of the Lake County Court of Common Pleas, denying its motion for summary judgment on the basis of governmental immunity.

{¶2} On August 11, 2010, appellee Norma Nicholas, stepped off a sidewalk near the entrance to the Lake County Juvenile Court and suffered significant injuries. During a break in proceedings in which she was a potential witness, Mrs. Nicholas went outside with her daughter, daughter-in-law, and grandchildren to smoke a cigarette and call her husband, appellee Dana Nicholas. She was on a sidewalk at the top of a set of concrete steps going down to a lower parking lot, approximately 50 to 75 feet from the entrance to the building. After noticing her four-year-old granddaughter running toward the lower parking lot, Mrs. Nicholas pivoted right to call the child back. She stepped off the sidewalk with her left foot in order to run after her granddaughter. There was a drop off of more than one foot from the sidewalk to the ground which she did not notice, as the area was obscured by tall grass. Mrs. Nicholas's left foot dropped down and caught in the underside of the concrete sidewalk. She fell, fractured her left ankle, right humerus, and a rib. Mrs. Nicholas underwent surgery for her ankle and had an extended hospital stay.

{¶3} According to Charles Klco, a Lake County building and grounds department supervisor, it was foreseeable that someone could accidentally step off the side of the walkway into the area at issue. Mr. Klco stated in his deposition that "because [of] the washout," rift-raft could be put in to "stop water from flowing underneath the concrete" and "preventing any further wash away from that area." Thus, after Mrs. Nicholas's fall and injury, Lake County repaired the area by laying stone. Mr. Klco termed this repair a "normal maintenance" issue.

**{¶4}** Thereafter, on November 29, 2011, the Nicholases filed a complaint for negligence against the Lake County Juvenile Court and Lake County.[1] The complaint alleged that a defective condition existed on the grounds of the Lake County Juvenile Court, which caused Mrs. Nicholas to fall and sustain severe and permanent physical injuries as well as pain and suffering. The complaint further alleged that Mr. Nicholas, as Norma's husband, suffered a loss of consortium and services as a result of his wife's injuries. The Lake County Juvenile Court and Lake County filed an answer on December 19, 2011.

**{¶5}** On July 12, 2012, Lake County filed a motion for summary judgment asserting, inter alia, that it was entitled to sovereign immunity pursuant to R.C. Chapter 2744. The Nicholases filed an opposition the following month, to which Lake County filed a reply in support of its motion for summary judgment.

**{¶6}** On December 4, 2012, the trial court denied Lake County's motion for summary judgment, holding that it was not entitled to sovereign immunity. Lake County filed a timely appeal asserting the following assignment of error:

**{¶7}** "The trial court erred in determining that Lake County was not entitled to summary judgment on the issue of sovereign immunity."

**{¶8}** Under its sole assignment, Lake County argues that the trial court erred in denying its motion for summary judgment and asserts the following issues: (1) the December 4, 2012 judgment is final and appealable as to the denial of statutory tort immunity under R.C. Chapter 2744; (2) construction and maintenance of courthouse grounds are governmental functions; (3) it is immune from liability because no exception

---

1. The Nicholases later voluntarily dismissed the Lake County Juvenile Court and it is not a named party to this appeal.

3

to the general grant of immunity applies; (4) it is immune from liability because one or more of the R.C. 2744.03(A) defenses apply; and (5) the trial court relied on inapposite case law.

{¶9} "'Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' *Holik v. Richards,* 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, ¶12, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, * * * (1996). 'In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.' Id. citing Civ.R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id. citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, * * * (1996).

{¶10} "Accordingly, '(s)ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' *Brunstetter v. Keating,* 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶12, citing *Dresher* at 292. 'Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Id., citing *Dresher* at 293.

4

{¶11} "* * *

{¶12} "* * *

{¶13} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt,* the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, * * *.

**{¶14}** "The court in *Dresher* went on to say that paragraph three of the syllabus in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, * * *, * * * is too broad and fails to account for the burden Civ.R. 56 places upon a *moving* party. The court, therefore, limited paragraph three of the syllabus in *Wing* to bring it into conformity with *Mitseff.* (Emphasis added.)

**{¶15}** "The Supreme Court in *Dresher* went on to hold that when *neither* the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, 'and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' *Id.* at 276. (Emphasis added.)" (Emphasis sic.) (Parallel citations omitted.) *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶36-37, 40-42.

**{¶16}** We agree with Lake County's first issue that the December 4, 2012 judgment is a final, appealable order as to the denial of statutory tort immunity under R.C. Chapter 2744. However, as addressed below, we disagree with Lake County's remaining four issues.

**{¶17}** R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *See Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶10, citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000).

{¶18} The first tier provides a general grant of immunity, stating that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

{¶19} In this case, Lake County is a political subdivision as defined in R.C. 2744.01(F) and "[t]he construction, reconstruction, repair, renovation, maintenance, and operation of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses[,]" are governmental functions pursuant to R.C. 2744.01(C)(2)(g). Therefore, the general grant of immunity contained in R.C. 2744.02(A)(1) applies in the instant matter. Thus, Lake County is immune from liability unless an exception to immunity exists.

{¶20} "The second tier in an immunity analysis focuses on the exceptions to immunity located in R.C. 2744.02(B)." *Elston, supra,* at ¶11. Applicable here is the exception found in R.C. 2744.02(B)(4), providing that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses[.]"

{¶21} Thus, to trigger the immunity exception under R.C. 2744.02(B)(4), a plaintiff must demonstrate that his or her injury was caused by the negligence of a political subdivision employee and that the injury was due to a physical defect. *See,*

*e.g., Dunfee v. Oberlin School Dist.,* 9th Dist. Lorain No. 08CA009497, 2009-Ohio-3406, ¶13. In the context of summary judgment, a party raising an immunity defense must present evidence tending to prove the underlying facts upon which the defense is based. *Evans v. S. Ohio Med. Ctr.*, 103 Ohio App.3d 250, 255 (4th Dist.1995). "To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). "The existence of a duty in a negligence action is a question of law for the court to determine." *Id.*

{¶22} The allegations contained in the Nicholases complaint match the provision under R.C. 2744.02(B)(4) because a claim sounding in negligence is asserted against Lake County, arising from an injury due to a physical defect that occurred on the grounds of a courthouse used in connection with the performance of a governmental function.

{¶23} Lake County alleges that the hole and jagged edge of concrete which led to Mrs. Nicholas's injuries do not constitute a "physical defect" within the meaning of R.C. 2744.02(B)(4). Although the term "physical defect" is not defined in the statute, prevailing authority holds that a "physical defect" is a "perceivable imperfection that diminishes the worth or utility of the object at issue." *See Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶28.

{¶24} Lake County also contends that the hole was an intentional condition of the property. However, Klco indicated that the area at issue was foreseeably traversed by pedestrians on the property and that Lake County had to repair the washout. Thus, it is illogical that county resources would be wasted to repair an "intentional" condition.

8

{¶25} The Nicholases provided evidence that the area adjacent to and under the sidewalk where Mrs. Nicholas fell was apparently washed out, causing a drop off of more than one foot from the sidewalk. As stated, Mrs. Nicholas's left foot dropped down and caught in the underside of the concrete sidewalk. She did not notice the hole because the area was obscured by tall grass.

{¶26} The photographs in the record reveal the "washout." According to Mr. Klco, it was foreseeable that someone, like Mrs. Nicholas, could accidentally step off the sidewalk into the area at issue. Mr. Klco stated that "because [of] the washout," rift-raft could be put in to "stop water from flowing underneath the concrete" and "preventing any further wash away from that area." Thus, after Mrs. Nicholas's fall and injury, Lake County repaired the area by laying stone, which goes against Lake County's theory that the hole was an "intentional condition."

{¶27} Negligence was established in this case, as Mrs. Nicholas' injuries proximately resulted from Lake County's breach of duty to make repairs to the hole prior to her fall. Based on the facts presented, the hole at issue was a "physical defect," thereby removing the cloak of immunity from Lake County under R.C. 2744.02(B)(4). *See e.g. Hall v. Fort Frye Loc. School Dist. Bd. of Edn.*, 111 Ohio App.3d 690 (4th Dist.1996) (holding that a depressed area in a school's football field, caused by a recessed sprinkler head and surrounding erosion, fell within the definition of a "physical defect" under R.C. 2744.02(B)(4)). Construing the foregoing evidence in the nonmoving party's favor, the exception to immunity under R.C. 2744.02(B)(4) applies.

{¶28} "Finally, in the third tier of the analysis, immunity may be reinstated if a political subdivision can successfully assert one of the defenses to liability listed in R.C.

9

2744.03." *Elston, supra,* at ¶12, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). Lake County claims it is entitled to immunity under R.C. 2744.03(A)(3) and (5), which state:

**{¶29}** "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

**{¶30}** "* * *

**{¶31}** "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

**{¶32}** "* * *

**{¶33}** "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

**{¶34}** Lake County agrees that, on its face, R.C. 2744.03(A)(3) applies only to the exercise of discretion with respect to "policy-making, planning, or enforcement powers." Applying that section to the case at bar, Lake County alleges that the design,

10

construction, grading, and landscaping of the courthouse grounds, as originally built, was the result of an exercise of discretion in "planning" which is protected from tort liability. Stated differently, Lake County claims that the hole where Mrs. Nicholas fell was not an issue of routine maintenance but rather was part of the original design of the courthouse's landscape. Essentially, this is the same argument that Lake County already asserted, i.e., that the hole did not constitute a "physical defect," and which we previously addressed and rejected.

{¶35} Again, according to Mr. Klco, "because [of] the washout," stone was laid to "stop water from flowing underneath the concrete" and "preventing any further wash away from that area." He had not noticed the area at issue before Mrs. Nicholas's fall, which refutes Lake County's assertion that the area was part of the original landscape design. Based on the facts presented, Lake County is not entitled to immunity under R.C. 2744.03(A)(3), which only extends to "policy-making, planning, or enforcement powers," none of which are at issue here.

{¶36} With respect to R.C. 2744.03(A)(5), Lake County relies on a recent decision from the Eighth District, *Ohio Bell Telephone Co. v. Cleveland*, 8th Dist. Cuyahoga No. 98683, 2013-Ohio-270, for the proposition that the statute protects it from liability due to its subsequent decision not to use resources to alter the stairway, modify the adjacent grade, or install a handrail where they intersect with the sidewalk. In *Ohio Bell*, city of Cleveland employees caused damage to Ohio Bell's property in the course of repairing a water main break. *Id.* at ¶2. Ohio Bell sought damages resulting from flooding and included specific allegations of wanton and reckless conduct. *Id.* The city of Cleveland filed a motion for summary judgment claiming it was entitled to

11

statutory immunity under R.C. 2744.03(A)(5). *Id.* at ¶3. The trial court denied the motion. *Id.* On appeal, the Eighth District affirmed the judgment of the trial court concluding that the city of Cleveland was not entitled to summary judgment on the basis of sovereign immunity. *Id.* at ¶21-22. The Eighth District held that genuine issues of material fact existed as to whether the discretion to immediately respond to the emergency situation was exercised in a wanton or reckless manner. *Id.* at ¶16.

{¶37} Unlike the plaintiff in *Ohio Bell*, the Nicholases do not allege that Lake County acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." Looking to the issue involving the repair work later done to the area, we determine a repair within or on the grounds of a building falls within routine maintenance and is not a discretionary act as contemplated under R.C. 2744.03(A)(5). Again, Mr. Klco stated that the repair work later done to remedy the area where Mrs. Nicholas fell and was injured constituted "normal maintenance." This court has held that routine or normal maintenance does not invoke immunity under R.C. 2744.03(A)(5). *See Johnson v. Ashtabula Cty. Joint Vocational School,* 11th Dist. Ashtabula No. 2010-A-0003, 2010-Ohio-3054, ¶41-43; *see also Hall, supra,* at 702; *Perkins v. Norwood City Schools*, 85 Ohio St.3d 191, 193 (1999).

{¶38} We fail to see where the trial court applied inapposite law and we disagree with Lake County that the court reached the wrong decision. Rather, we determine that the trial court properly concluded that Lake County is not entitled to summary judgment on the issue of sovereign immunity.

12

{¶39} For the foregoing reasons, Lake County's sole assignment of error is not well-taken.  The judgment of the Lake County Court of Common Pleas is affirmed.  It is ordered that Lake County is assessed costs herein taxed.  The court finds there were reasonable grounds for this appeal.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.