[Cite as *Carozza v. Lusk*, 2022-Ohio-3272.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| LARRY E. CAROZZA, et al., | : | |
| Appellees, | : | CASE NO. CA2021-12-155 |
| | : | O P I N I O N |
| - vs - | | 9/19/2022 |
| | : | |
| JAMES LUSK, et al., | : | |
| Appellants. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2020 10 1554


Slater & Zurz, LLP, and Mark A. Ropchock and Richard V. Zurz, Jr., for appellees.

Surdyk, Dowd & Turner Co., L.P.A., and Jeffrey C. Turner and David B. Shaver, for appellants.


**HENDRICKSON, J.**

{¶ 1} Appellants, James Lusk ("Lusk") and the city of Middletown, Ohio ("City"), appeal the denial of their respective motions for summary judgment by the Butler County Court of Common Pleas. For the reasons discussed below, we reverse the trial court's denial of summary judgment as to both Lusk and the City.

{¶ 2} On January 11, 2017, at 7:17 a.m., emergency dispatchers received a call

about a child who had been struck by a car and was breathing, but not responsive, at Highland Street and Jefferson Road in Middletown. At 7:18 a.m., units from the Middletown Police Department were dispatched to the scene. That day, Sergeant Steven Ream was responsible for ensuring officers were dispatched appropriately to all calls received. Due to the serious nature of the call, Sergeant Ream testified that his expectation was that all available officers would respond. At 7:18 a.m., Officer Lusk entered his Evidence Technician vehicle, activated his emergency lights and siren, and left the police station to respond.

{¶ 3} Leaving the station, Officer Lusk turned right onto Reinartz Boulevard. He encountered a red light at the intersection of Reinartz Boulevard and Verity Parkway. Dash camera video footage from his cruiser shows an Ohio Department of Transportation salt truck and other traffic at that intersection. Officer Lusk cleared the intersection, proceeding through the red light. He accelerated, continuing eastbound on Reinartz Boulevard through light traffic. He then drove through a green light at the intersection of Reinartz Boulevard and Clark Street, reaching a top of speed of approximately 60 miles per hour.

{¶ 4} Officer Lusk began braking as he approached a red light at the intersection of Reinartz Boulevard and Charles Street. He saw a school bus turn westbound onto Reinartz Boulevard from southbound on Charles Street, but saw no other traffic. After having slowed to approximately 35 miles per hour, and believing the intersection was clear, Officer Lusk proceeded into the intersection. At the same time, Larry Carozza was driving southbound on Charles Street in his Kalmar Ottawa T2 terminal-tractor, and was stopped at a red light at the intersection with Reinartz Boulevard. When the light turned green, Carozza drove into the intersection at about 15–20 miles per hour after the school bus made a righthand turn onto westbound Reinartz in front of him. Carozza did not see Officer Lusk approaching, nor did Officer Lusk see Carozza. As a result, Officer Lusk's cruiser collided with Carozza's

truck.

{¶ 5}  Carozza and his wife, Kenna Carozza ("appellees"), filed a complaint for negligence against both Lusk and the City.  Appellees filed a motion for partial summary judgment on the issue of Carozza's comparative negligence and appellants filed a motion for summary judgment, arguing that they were entitled to immunity pursuant to R.C. Chapter 2744.  On November 8, 2021, the trial court denied the parties' competing motions for summary judgment.  Appellants timely appealed the trial court's denial of their motion, raising one assignment of error.[1]

{¶ 6}  THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENIED DEFENDANTS THE BENEFIT OF THE IMMUNITY CONFERRED UPON THEM BY REVISED CODE CHAPTER 2744.

{¶ 7}  Appellants argue that the trial court erred in denying their motion for summary judgment on the basis of the Political Subdivision Tort Liability Act, which they contend provides immunity against appellees' suit.

**Standard of Review**

{¶ 8}  "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 12.  "The review of a summary judgment denying political-subdivision immunity is de novo and is governed by the summary-judgment standard set forth in Civ.R. 56." *Id.*; *see also McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 18.  De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.  *Matthews v. Texas*

---

1. Appellees did not appeal the trial court's denial of their motion for partial summary judgment.

*Roadhouse Mgt. Corp.*, 12th Dist. Butler No. CA2020-03-037, 2020-Ohio-5229, ¶ 4.

{¶ 9} Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Lloyd v. Ernst*, 12th Dist. Warren No. CA2018-05-058, 2019-Ohio-756, ¶ 15. The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Wulf v. Bravo Brio Restaurant Group, Inc.*, 12th Dist. Butler No. CA2018-12-238, 2019-Ohio-3434, ¶ 16.

{¶ 10} Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Hellmuth v. Hood*, 12th Dist. Butler No. CA2018-07-154, 2019-Ohio-4835, ¶ 16. Summary judgment is proper if the nonmoving party fails to set forth such facts. *Anderson v. Jancoa*, 12th Dist. Butler No. CA2019-01-018, 2019-Ohio-3617, ¶ 23. In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Springboro Commons Retirement Villa, Inc. v. Feltner*, 12th Dist. Warren No. CA2020-07-040, 2021-Ohio-544, ¶ 11.

**Political Subdivision Liability**

{¶ 11} "R.C. Chapter 2744, the Political Subdivision Tort Liability Act, sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees." *McConnell*, 2019-Ohio-4740 at ¶ 20. "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a familiar, three-tiered analysis." *Pelletier*, 2018-Ohio-2121 at ¶ 15. First, R.C. 2744.02(A) establishes the general rule that a political subdivision is immune from liability for acts or omissions connected with governmental or proprietary functions. *Burnell v. Dulle*, 169 Ohio App.3d 792, 2006-Ohio-7044, ¶ 9 (12th Dist.). That immunity, however, is not absolute.

*Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, ¶ 15.

{¶ 12} "The second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose the political subdivision to liability." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 14. "In cases involving the alleged negligent operation of a motor vehicle by an employee of a political subdivision, the second tier of the analysis includes consideration of whether the specific defenses of R.C. 2744.02(B)(1)(a) through (c) apply to negate the immunity exception of R.C. 2744.02(B)(1)." *Id.*; *see also Burnell* at ¶ 9. "If any of the exceptions to immunity are applicable, thereby exposing the political subdivision to liability, the third tier of the analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity." *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 9; *see also Burnell* at ¶ 9.

{¶ 13} R.C. 2744.02(B)(1)(a) provides the political subdivision a "full defense" to liability when "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." "This provision applies 'when an officer is responding to a call to duty, which includes responding to a dispatch for assistance out of a professional obligation to do so.'" *McConnell*, 2019-Ohio-4740, at ¶ 26, quoting *Smith* at ¶ 14.

**Public Employee Liability**

{¶ 14} Ohio law provides immunity for employees of political subdivisions under R.C. 2744.03(A)(6). *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010 and CA2009-08-012, 2010-Ohio-3368, ¶ 29. "For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used." *Lambert* at ¶ 10. Instead, R.C. 2744.03(A)(6) provides that a political subdivision employee is

immune from liability in a civil action for claims arising from the employee's official actions *unless* one of three exceptions applies: (a) the employee's acts were manifestly outside the scope of employment or official responsibilities; (b) the acts were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) liability is expressly imposed by another section of the Revised Code. *Smith v. Pierce Twp.*, 12th Dist. Clermont No. CA2013-10-079, 2014-Ohio-3291, ¶ 34.

{¶ 15} "[W]anton misconduct and reckless conduct are not synonymous with negligence, for which an employee of a political subdivision is immune from liability." *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, Slip Opinion No. 2021-Ohio-4096, ¶ 8. Furthermore, "'willful,' 'wanton,' and 'reckless' describe different and distinct degrees of care and are not interchangeable." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 31. "When the General Assembly used the terms 'willful' or 'wanton' in R.C. 2744.02(B)(1)(b) to deny a full defense to liability for a political subdivision and the terms wanton or reckless in R.C. 2744.03(A)(6)(b) to remove the immunity of an employee of the political subdivision, it intended different degrees of care." *Id.* at ¶ 36.

**Analysis**

{¶ 16} "Willful or wanton misconduct" by Lusk would allow the City, as a political subdivision to be held liable under R.C. 2744.02(B)(1)(a); "wanton" or "reckless behavior" by Lusk would allow Lusk to be held personally liable as an employee of a political subdivision under R.C. 2744.03(A)(6)(b). However, "[d]emonstrating either 'wantonness' or 'recklessness' is subject to a high standard." *Pressler v. City of Franklin*, 12th Dist. Warren No. CA2016-06-050, 2017-Ohio-1408, ¶ 12. "Thus, although the determination of wantonness or recklessness is typically within the province of the jury, summary judgment is appropriate in instances where the individuals' conduct does not demonstrate a disposition to perversity." *Estate of Smith v. Western Brown Local School Dist.*, 12th Dist.

Brown No. CA2014-06-012, 2015-Ohio-154, ¶ 58; *see also O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 75.

{¶ 17} Preliminarily, we note that while appellees question whether Lusk was responding to an "emergency call" as required by R.C. 2744.02(B)(1)(a), they ultimately presented no evidence to counter the testimony establishing that there was an expectation that Lusk (and indeed all available officers) would respond to the call based upon its severity. "'Emergency call' is defined in R.C. 2744.01(A) as 'a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer.'" *Smith*, 2011-Ohio-4674, at ¶ 17, quoting R.C. 2744.01(A). "It is *the urgent call to duty * * ** that defines an emergency and triggers immunity." (Emphasis added.) *Napper v. Litchfield*, 12th Dist. No. CA91-02-006, 1991 WL 194740, *1 (Sept. 30, 1991). Even viewed in the light most favorable to appellees, the testimony of Lusk and Sergeant Ream makes clear that Lusk was responding to an emergency call.

*The City's Motion for Summary Judgment*

{¶ 18} The first issue is whether the trial court erred in denying the City's motion for summary judgment. It is undisputed that—as to the first tier of the sovereign-immunity analysis—operating a police cruiser in response to an emergency call is a "governmental function." As the trial court noted, the parties "agree that Lusk was acting within the course and scope of his employment at the time of the accident." We therefore begin our analysis at the second tier, and focus on whether the specific defense of R.C. 2744.02(B)(1)(a) applies to negate the immunity exception of R.C. 2744.02(B)(1). *Smith*, 2011-Ohio-4674 at ¶ 14; *see also McConnell*, 2019-Ohio-4740 at ¶ 9. As previously stated, R.C. 2744.02(B)(1)(a) "provides a full defense to a political subdivision for motor-vehicle liability when its three conditions are met: (1) the vehicle's operator was a member of the municipal

corporation's police department, (2) the officer was responding to an emergency call, and (3) the operation of the vehicle did not constitute willful or wanton misconduct." *Id.* We thus need only determine whether Lusk's behavior constituted "willful or wanton misconduct." R.C. 2744.02(B)(1)(a).

{¶ 19} "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson*, 2012-Ohio-5711 at ¶ 32. "An individual acts in a 'wanton' manner when that person fails 'to exercise any care toward those to whom a duty of care is owed in circumstances which there is a great probability that harm will result.'" *J.H. v. Hamilton City School Dist.*, 12th Dist. Butler No. CA2012-11-236, 2013-Ohio-2967, ¶ 20, quoting *Anderson*, at ¶ 33. The trial court, while properly noting these definitions in its decision, declined to apply them to the facts of the case.

{¶ 20} After reviewing the record, we find that the undisputed evidence in the record does not support appellees' claim that Lusk acted willfully or wantonly. The cruiser video footage shows that Lusk had his emergency lights activated and that he was driving at speeds up to 60 miles per hour as he approached the intersection where the accident occurred. At the time of the accident, it was dark, cold, and potentially icy. Testimony also established that Lusk slowed to approximately 35 miles per hour as he approached the intersection, which was a 35 mile per hour zone. Even assuming that Lusk did not operate the siren on his vehicle, as appellees suggest, and that he should have slowed the cruiser *more* when entering the intersection, appellees failed to establish issues of fact indicating the total absence of care of a known risk required before the operation of an automobile is considered "willful" or "wanton." *See Lipscomb v. Lewis*, 85 Ohio App.3d 97, 102 (12th Dist.1993). Lusk was not statutorily required to sound the siren, "however desirable such

action may be." *Id.*; *see also* R.C. 4511.03(A).

{¶ 21} Because genuine issues of material fact do not exist on the issue of whether Lusk's actions constituted "willful or wanton misconduct," the City is entitled to judgment as a matter of law under R.C. 2744.02(B)(1)(b). Since reasonable minds could come only to this conclusion, the trial court erred by denying the City's motion for summary judgment.

*Lusk's Motion for Summary Judgment*

{¶ 22} The second issue is whether the trial court erred in denying Lusk's motion for summary judgment. Because Lusk moved for summary judgment on the basis of R.C. 2744.03(A)(6)(b) immunity, we must determine whether, based on the evidence in the record, reasonable minds could conclude that he either acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" so as to preclude immunity. *See Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 15. We previously determined above that the evidence is clear that Lusk's operation of his vehicle did not constitute "willful or wanton misconduct." Because "malicious purpose" suggests a higher level of intentionality than willful or wanton misconduct, the only remaining issue to be determined is whether there is a genuine issue of material fact as to whether Lusk acted in a "reckless manner."

{¶ 23} Recklessness is "'a perverse disregard of a known risk.'" *A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, ¶ 17, quoting *O'Toole*, 2008-Ohio-2574 at paragraph three of the syllabus. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is *substantially greater than negligent conduct*." (Emphasis added.) *Anderson* at ¶ 34. In order to find that Lusk was reckless, we must determine that he was "conscious that [his] conduct [would] in all probability result in injury.'" *A.J.R.*, 2020-Ohio-5168 at 23, quoting *O'Toole*, 2008-Ohio-2574 at paragraph three of the syllabus. "In other words, for [his] conduct to have been reckless," Lusk "must have been more than negligent

- 9 -

in regard to the risk; [he] must have displayed a 'conscious disregard of or indifference to' the risk of physical harm" to drivers, including Carozza, "'that [was] unreasonable under the circumstances.'" *Id.*, quoting *Anderson*, 2012-Ohio-5711 at paragraph four of the syllabus.

{¶ 24} As established above, a close examination of the facts reveals that Lusk's conduct, while potentially negligent, did not rise to the level of "recklessness." *Pressler*, 2017-Ohio-1408 at ¶ 12 ("Demonstrating either 'wantonness' or 'recklessness' is subject to a high standard."). Lusk had his lights activated and slowed his vehicle to within the speed limit as he approached the intersection. While it might have been more prudent for him to slow down more, perversity, not prudence, is the measure by which recklessness is determined. *A.J.R.* at ¶ 17, quoting *O'Toole* at paragraph three of the syllabus. Lusk's conduct does not demonstrate a perverse disregard of a known risk. *O'Toole* at ¶ 3. "R.C. 2744.03(A)(6)(b) does not impose civil liability upon political subdivision employees for mere negligent acts, but instead, requires a showing of malice, bad faith, or wanton or reckless misconduct." *Winkle v. Zettler Funeral Homes, Inc.*, 182 Ohio App.3d 195, 2009-Ohio-1724, ¶ 24 (12th Dist.). As such, the trial court erred in denying Lusk's motion for summary judgment.

## Conclusion

{¶ 25} "[A]lthough the determination of wantonness or recklessness is typically within the province of the jury, summary judgment is appropriate in instances where the individuals' conduct does not demonstrate a disposition to perversity." *Estate of Smith*, 2015-Ohio-154 at ¶ 58. In the case *sub judice*, appellees failed to present evidence that Lusk acted in a "wanton" or "reckless" manner. Appellants are entitled to immunity from tort liability under both R.C. 2744.02(B)(1)(a) and R.C. 2744.03(A)(6)(b). We therefore sustain appellants' assignments of error.

{¶ 26} Finding that appellants are entitled to judgment as a matter of law, we hereby

reverse the trial court's judgment and enter summary judgment on behalf of the City and Lusk in accordance with App.R. 12(B).

{¶ 27} Judgment reversed and judgment entered on behalf of appellants.

M. POWELL, P.J., and S. POWELL, J., concur.