[Cite as *Shaw v. Washington Court House City Schools Bd. of Edn.*, 2022-Ohio-4226.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| TRINA SHAW, | : | |
| Appellant, | : | CASE NO. CA2022-04-004 |
| | : | O P I N I O N |
| - vs - | | 11/28/2022 |
| | : | |
| WASHINGTON COURT HOUSE CITY SCHOOLS BOARD OF EDUCATION, | : | |
| | : | |
| Appellee. | | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH 20200286

Dyer, Garofalo, Mann & Schultz, and John A. Smalley, for appellant.

Reminger Co., L.P.A., and Michael J. Valentine, Melvin J. Davis, and Keona R. Padgett, for appellee.

**S. POWELL, P.J.**

{¶ 1}  Appellant, Trina Shaw, appeals the decision of the Fayette County Court of Common Pleas granting summary judgment in favor of appellee, Washington Court House City Schools Board of Education ("BOE").  For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2}  On October 23, 2020, Trina filed a complaint against BOE seeking to recover

for the injuries she sustained from a fall in the Washington Court House High School's parking lot at approximately 9:30 p.m. on the evening of March 1, 2019. To support her complaint, Trina alleged that her fall was the result of a dangerous and/or hazardous condition in the high school's parking lot; "a drop off from deterioration in the pavement of the parking lot." BOE filed its answer on November 23, 2020 setting forth its defenses. These defenses included BOE alleging it was entitled to statutory immunity pursuant to R.C. Chapter 2744. This also included BOE alleging that any condition Trina may have encountered in the high school's parking lot was open and obvious. The matter then proceeded to discovery.

{¶ 3} On June 29, 2021, Trina sat for her deposition. As part of her deposition, Trina testified that she and her husband, Ryan, along with her daughter, son-in-law, and two grandchildren, were walking to their respective vehicles parked in the high school's parking lot on the evening of March 1, 2019. Trina testified it was at this time that she stepped into a two-to-three inch deep "hole" in the parking lot's pavement located next to a "catch basin." Trina testified this hole caused the pavement to not be "flush" with the asphalt surrounding the catch basin. The following are two of the photographs identified by Trina during her deposition, both of which contain circles that Trina drew around the so-called "hole" in the high school's parking lot.

 

{¶ 4}   Referring to these photographs for guidance, Trina was then asked to explain what she had done just prior to her fall.  Answering, Trina testified that prior to her fall she walked out of the high school gymnasium, across the road separating the high school building and the high school's parking lot, and over to an opening in the curb running adjacent to the road.  Trina testified that this was essentially the same route, traversing over the same area, that she had taken when entering the high school earlier that evening to watch her grandson's basketball game.  Trina testified that while she was walking to her vehicle that she was following behind her daughter, her son-in-law, and her two grandchildren, with her husband, Ryan, trailing behind her.  Trina testified that she was not looking down to the ground during this time, but was instead "looking to walk just normal to follow behind them."

{¶ 5}   Trina testified that after making it across the road that she then walked down towards the curb cutout, something that Trina referred to as a "little hump thing," and through the opening in the curb and into the parking lot.  Upon walking through the curb cutout, Trina testified that she then made a slight right hand turn towards her vehicle that was parked in the first row, four cars down.  Trina testified it was at this time that she "fell in the hole."  Describing her fall, Trina testified that it was her right foot that entered the hole first, followed by her left foot, which caused her to lose her balance, fall to her knees, and have her hands hit the ground.

{¶ 6}   Trina testified that after falling to the ground that she then "laid there for a minute" because she was not sure what happened and was scared.  When asked if she looked to see what had caused her to fall that evening Trina testified, "I eventually got up and then, yes."  Trina was then asked if she was, in fact, able to see the hole that caused her to fall.  To this, Trina testified that although it was dark outside, she was nevertheless able to see the hole that caused her to fall without the need of a flashlight or anything else

to illuminate the area. Specifically, Trina testified, with bold emphasis in the original, as follows:

Q. So you got up and then what? Did you look to see what caused you to fall?

**Yes.**

Q. Were you able to see it?

**Well, it was dark.**

Q. Right. But –

**Yes. Yes.**

Q. Okay. So this was after you had been laying there a minute, you looked to see what caused you to fall, you looked and then you were able to see the hole?

**Yes.**

Q. Did you have a flashlight or anything?

**No.**

{¶ 7} Trina's husband, Ryan, was also deposed. As part of his deposition, Ryan testified that as he was walking towards the high school parking lot behind his wife, Trina, daughter, son-in-law, and two grandchildren, he heard Trina scream and noticed that "[t]hey was all hovered around [her]." Upon approaching, Ryan testified that he then he asked, "What happened?," and Trina responded, "Well, I fell right here." Ryan testified that Trina was at this time sitting down on her bottom in the high school's parking lot "just off from that catch basin just past that curb line." Ryan testified that he then crouched down to help Trina get to her feet.

{¶ 8} Ryan testified that after crouching down he looked to see what may have caused Trina to fall. When asked if he was, in fact, able to see what caused Trina's fall, Ryan responded, "Yeah," by this time "you had to see it" because it was "in the glow of any

kind of a light" emanating from all of the lights in the parking lot. Ryan was then asked if, after getting Trina up to her feet, he was able to see what caused Trina to fall. To this, Ryan responded, "I actually saw the spot before I was up because I was looking before I got up because we were talking."

{¶ 9} On December 15, 2021, BOE filed a motion for summary judgment. In support of its motion, BOE initially argued that it was statutorily immune from liability for Trina's injuries pursuant to R.C. Chapter 2744 because Trina could not demonstrate that the "divot" in the high school's parking lot was a "physical defect" under R.C. 2744.02(B)(4). According to BOE, this was because: (1) "the parking lot acted as it is intended to do: to provide parking for vehicles;" and (2) there was no evidence to indicate the divot "diminished the utility of the parking lot at issue." BOE also argued the divot was open and obvious as a matter of law.

{¶ 10} On April 7, 2022, the trial court issued a decision granting summary judgment in favor of BOE upon finding BOE was statutorily immune from liability for Trina's injuries pursuant to R.C. Chapter 2744. In so holding, the trial court stated:

> For purposes of this dispositive motion, the Court assumes negligence of [BOE] and the focus becomes whether the "hole" constitutes a "physical defect." The Court finds, as a matter of law, that the approximately four-inch hole in the asphalt pavement contiguous to a concrete border surrounding a drainage grate is not a physical defect for purposes of establishing a statutory exception under R.C. 2744.02(B)(4) and no evidence has been submitted that the parking lot and/or the drainage grate failed to operate as intended, or that the utility of either was diminished.[1]

{¶ 11} The trial court thereafter concluded and stated that BOE was entitled to immunity under R.C. Chapter 2744 because Trina "failed to present evidence sufficient to

---

1. We note that Michael Skaggs, the director of operations and safety for the Washington Court House City School District, was also deposed. Skaggs testified that the "hole" in question was actually four inches deep rather than just two or three inches as Trina testified to in her deposition.

abrogate that immunity." The trial court did this without reaching any decision as it relates to whether the "hole" was also open and obvious as a matter of law.

## Trina's Appeal and Single Assignment of Error

{¶ 12} Trina now appeals the trial court's decision to grant summary judgment to BOE, raising the following single assignment of error for review.

{¶ 13} THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 14} Trina argues the trial court erred by granting summary judgment in favor of BOE upon finding BOE was entitled to statutory immunity pursuant to R.C. Chapter 2744. To support this claim, Trina argues that a genuine issue of material fact remains as to whether the "hole" in the high school's parking lot constitutes a "physical defect" as that term is used in R.C. 2744.02(B)(4). We disagree.

### De Novo Standard of Review

{¶ 15} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C v. Dameron*, 12th Dist. Clermont No. CA2015-09-073, 2016-Ohio-878, ¶ 16, citing *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). This court reviews a trial court's decision to grant summary judgment de novo. *Faith Lawley, L.L.C v. McKay*, 12th Dist. Warren No. CA2020-08-052, 2021-Ohio-2156, ¶ 26. De novo review requires this court to use the same standard that the trial court should have used. *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14.

### Civ.R. 56 Summary Judgment Standard

{¶ 16} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 12th Dist. Clermont No. CA2020-10-058, 2021-Ohio-1127, ¶ 14. "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any

material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 12th Dist. Butler No. CA2020-12-128, 2021-Ohio-1913, ¶ 6, citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Ownerland Realty, Inc. v. Zhang*, 12th Dist. Warren Nos. CA2013-09-077 and CA2013-10-097, 2014-Ohio-2585, ¶ 14, citing *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. Butler No. CA2009-07-178, 2010-Ohio-2961, ¶ 9. "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C v. Young*, 12th Dist. Warren No. CA2019-04-039, 2019-Ohio-3953, ¶ 14, citing *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

*Political Subdivision Immunity Under R.C. Chapter 2744*

{¶ 17} R.C. Chapter 2744 establishes a three-tiered analysis for determining whether a political subdivision is immune from tort liability. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 15. "First, R.C. 2744.02(A) establishes the general rule that a political subdivision is immune from liability for acts or omissions connected with governmental or proprietary functions." *Carozza v. Lusk*, 12th Dist. Butler No. CA2021-12-155, 2022-Ohio-3272, ¶ 11, citing *Burnell v. Dulle*, 169 Ohio App.3d 792, 2006-Ohio-7044, ¶ 9 (12th Dist.). That grant of immunity, however, is not absolute. *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, ¶ 15. "The second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose the political subdivision to liability." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 14. These exceptions include the "physical defect" exception set forth under R.C. 2744.02(B)(4). "If any of the exceptions to immunity are applicable, thereby

exposing the political subdivision to liability, the third tier of the analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity." *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 9.

*R.C. 2744.02(B)(4) and the "Physical Defect" Exception*

{¶ 18} Because there is no dispute that BOE is a political subdivision that was performing a governmental function by operating and maintaining the high school's parking lot where Trina fell, the initial focus of this case is on the second tier of the analysis and the applicability of the "physical defect" exception to a political subdivision's immunity set forth under R.C. 2744.02(B)(4). Pursuant to that statute:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

Therefore, to establish that the physical defect exception applies, "a plaintiff must demonstrate that the injury (1) resulted from a political subdivision employee's negligence, (2) occurred within or on the grounds of buildings used in connection with governmental function, and (3) resulted from a physical defect within or on those grounds." *Leasure v. Adena Local School Dist.*, 4th Dist. Ross No. 11CA3249, 2012-Ohio-3071. "The injured party must establish *all three* circumstances to defeat the immunity afforded the political subdivision under the first step of the immunity analysis." (Emphasis sic.) *O'Brien v. Great Parks of Hamilton Cty.*, 1st Dist. Hamilton No. C-190697, 2020-Ohio-6949, ¶ 13.

*The Definition of "Physical Defect" Under R.C. 2744.02(B)(4)*

{¶ 19} "[C]ases addressing the 'physical defect' exception involve physical defects

as part of the structure of buildings and the maintenance of those structures." *Conley v. Wapakoneta City School Dist. Bd. of Edn.*, 3d Dist. Auglaize No. 2-21-18, 2022-Ohio-2915, ¶ 44. The term "physical defect," however, is not defined within R.C. Chapter 2744. *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 15CA010767, 2016-Ohio-169, ¶ 11. Nevertheless, although not statutorily defined, the "prevailing authority" has defined the term "physical defect" in the context of R.C. 2744.02(B)(4) to mean "a perceivable imperfection that diminishes the worth or utility of the object at issue." *Nicholas v. Lake Cty.*, 11th Dist. Lake No. 2012-L-140, 2013-Ohio-4294, ¶ 23, citing *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 28 (given the separate definitions of "physical" and "defect" as set forth in *Merriam Webster's New Collegiate Dictionary* [10th Ed.1996], "[i]t would seem then that a 'physical defect' is a perceivable imperfection that diminishes the worth or utility of the object at issue"). "That understanding flows from the ordinary meaning of the words used in the statutory phrase." *Shields v. Plummer*, 10th Dist. Franklin No. 20AP-214, 2020-Ohio-5449, ¶ 19, discretionary appeal not allowed, *Crochran v. Plummer*, 161 Ohio St.3d 1474, 2021-Ohio-717.

{¶ 20} For example, "[w]hen the instrumentality that caused a plaintiff's injury operated as intended or did not contain any perceivable imperfection that impaired or diminished its utility, courts have concluded the instrumentality did not constitute a physical defect." *Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. Delaware No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22, citing *Hamrick* at ¶ 29 (service pit at a school bus garage was not a "physical defect" under R.C. 2744.02[B][4] where the record was devoid of any evidence "that there was any discernable imperfection that diminished the utility of either the bus garage or the service pit" and "nothing of record to suggest that either did not perform as intended or was less useful than designed"); *see also Smiley v. Cleveland*, 8th Dist. Cuyahoga No. 106471, 2018-Ohio-2847, ¶ 25 (metal strip on the floor of a city's

recreation center was not a "physical defect" under R.C. 2744.02[B][4] where the record did not demonstrate that the strip "failed to operate properly as a track for the sliding glass door or that the strip's worth or utility was somehow diminished or impaired").

{¶ 21} On the other hand, "[w]hen an instrumentality does not operate as intended (i.e. safely) due to a perceivable condition, it loses its ability to function in a safe manner and may constitute a perceivable imperfection that diminishes the instrumentality's utility or worth." *Id.* at ¶ 23 (finding that a lack of reflective tape and lighting around the edge of an orchestra pit that would have provided an indication to people of the difference in elevation may be deemed a "physical defect"); citing *Leasure*, 2012-Ohio-3071 (genuine issue of material fact existed as to whether improperly set-up bleachers located in a school gymnasium constituted a "physical defect" given that the improper set up "caused them to become unstable and, thus, to fail to operate as intended"); *see also Stanfield v. Reading Bd. of Edn.*, 1st Dist. Hamilton No. C-160895, 2018-Ohio-405, ¶ 14 (finding a "gaping and holed netting" at a high school's stadium facility that was set up with the intention of stopping "a two-pound discuss from careening towards onlookers" was a "physical defect").

*The "Hole" Does Not Constitute a "Physical Defect" Under R.C. 2744.02(B)(4)*

{¶ 22} Trina argues it was error for the trial court to grant summary judgment to BOE because a genuine issue of material fact exists as to whether the "hole" in the high school's parking lot constitutes a "physical defect" under 2744.02(B)(4). The record, however, is devoid of any evidence to indicate the high school's parking lot failed to operate as intended because of that hole, or that the utility of the high school's parking lot was impaired or diminished in any way by that hole. The record is also devoid of any evidence that would indicate the high school's parking lot's worth somehow decreased or was diminished because of that hole. This makes sense when considering the "hole" in the high school's parking lot was nothing more than a two-to-four inch decline, divot, or gap, in the contiguous

- 10 -

paved surface surrounding a drainage grate located therein.

{¶ 23} Given the prevailing authority and examples set forth above, we find the "hole" in the high school's parking lot falls well short of what constitutes a "physical defect" under R.C. 2744.02(B)(4). *See, e.g., Nicholson v. LoanMax, L.L.C.*, 7th Dist. Belmont No. 16 BE 0057, 2018-Ohio-375, ¶ 22-25 (finding a "pothole in a parking lot" that a board of education had an easement to use for students to exit from a school bus was not a "physical defect" under R.C. 2744.02[B][4] given the "easement operated as it was intended to do"). "Just because a place could be safer does not mean that there is a 'physical defect.'" *Nored v. Dayton City School Dist. Bd. of Edn.*, Cuyahoga C.P. No. 2018 CV 2916, 2018 Ohio Misc. LEXIS 5581, *7 (Sept. 24, 2018). Therefore, the trial court did not err in its decision finding the "hole" in the high school's parking lot was not, as a matter of law, a "physical defect" under R.C. 2744.02(B)(4). Trina's claim otherwise lacks merit.

*The "Hole" Was Open and Obvious as a Matter of Law*

{¶ 24} Alternatively, even if we were to find the "hole" in the high school's parking lot was a "physical defect" under R.C. 2744.02(B)(4), the record firmly establishes that the hole was open and obvious as a matter of law.

{¶ 25} "Under the open and obvious doctrine, the owner of a premises does not owe a duty to persons entering those premises with regard to dangers that are open and obvious." *Wulf v. Bravo Brio Restaurant Group, Inc.*, 12th Dist. Butler No. CA2018-12-238, 2019-Ohio-3434, ¶ 22, citing *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13. "The rationale behind this doctrine is that 'the open and obvious nature of the hazard itself serves as a warning.'" *Roberts v. United Dairy Farmers, Inc.*, 12th Dist. Butler No. CA2014-03-066, 2014-Ohio-3881, ¶ 9, quoting *Simmers v. Bentley Constr Co.*, 64 Ohio St.3d 642, 644 (1992). "When deciding whether a condition is open and obvious, 'the determinative question is whether the condition is discoverable or discernible by one who

is acting with ordinary care under the circumstances.'" *Kemme v. Seltzer Holdings, L.L.C*, 12th Dist. Butler No. CA2019-10-182, 2020-Ohio-3142, ¶ 14, quoting *Williamson v. Geeting*, 12th Dist. Preble No. CA2011-09-011, 2012-Ohio-2849, ¶ 18. "This determination is an objective one," *Gentry v. Collins*, 12th Dist. Warren No. CA2012-06-048, 2013-Ohio-63, ¶ 21, and "'depends upon the particular circumstances surrounding the hazard.'" *Barnett v. Beazer Homes Invests., L.L.C.*, 180 Ohio App.3d 272, 2008-Ohio-6756, ¶ 32 (12th Dist.), quoting *Olivier v. Leaf & Vine*, 2d Dist. Miami No. 2004 CA 35, 2005-Ohio-1910, ¶ 31.

{¶ 26} Trina argues that there exists a genuine issue of material fact whether the "hole" in the high school's parking lot was open and obvious because she was "not aware" of the hole until after she fell, and because she had "little notice" and limited opportunity to see the hole given her view of the hole was "obstructed by the curb." Trina also argues that a genuine issue of material fact exists because it was dark outside and because the hole was "blended in color" with the surrounding asphalt making it "difficult" for her to see the hole. However, as this court has stated previously, "the dangerous condition need not be actually observed by the claimant to be considered open and obvious." *Vanderbilt,* 2013-Ohio-5205 at ¶ 12; *see, e.g., Kronjak v. New Plaza Mgt., L.L.C.*, 9th Dist. Summit No. 28302, 2017-Ohio-1184, ¶ 16 ("[t]he fact that [appellant] did not see the hole in the pavement prior to falling does not change the condition from being open and obvious"). That the hole was the same basic color as the surrounding asphalt does not change this fact. *See, e.g., Shipman v. Papa John's*, 3d Dist. Shelby No. 17-14-17, 2014-Ohio-5092, ¶ 26 ("[t]he fact that the concrete and the deviations were the same color does not prevent the condition from being open and obvious, and it did not, in fact, prevent [appellant] from readily noticing the raised concrete when she was actually looking at it").

{¶ 27} "Hazards that have been deemed open and obvious are those that are not concealed and are discoverable by ordinary inspection." *French v. New Paris*, 12th Dist.

Preble No. CA2010-05-008, 2011-Ohio-1309, ¶ 22, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51 (5th Dist.1989). Given the record properly before this court, it is clear that the hole in the high school's parking lot was not concealed in any way. The hole was instead readily discoverable by ordinary inspection. Both Trina and her husband, Ryan, expressly testified as such as part of their individual deposition testimony. Therefore, rather than a hole that was impossible for to see, the record instead firmly demonstrates that had Trina been looking where she was walking, she would have been able to observe, appreciate, and avoid the hole in question with little to no effort. The open and obvious doctrine absolves BOE from liability for Trina's injuries under these circumstances. This holds true even though it was dark for it is well established that "darkness itself is considered an open and obvious warning of danger." *Roberts v. Kauffman 4 Dayton, Ltd.*, 2d Dist. Montgomery No. 29412, 2022-Ohio-3164, ¶ 29; *See, e.g., Hunter v. Jamin Bingo Hall*, 6th Dist. Lucas No. L-08-1084, 2008-Ohio-4485 (open and obvious doctrine barred a plaintiff from recovering damages for injuries the plaintiff suffered as a result of falling into a drainage hole located in a dimly lit parking lot at night).

## Conclusion

{¶ 28} For the reasons outlined above, and finding no merit to any of the arguments raised herein, Trina's single assignment of error challenging the trial court's decision granting summary judgment to BOE is overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.